*172
The opinion of the Court was delivered by

JfCr. JusitcB Gantt.

The first ground taken for a nonsuit is, that the plaintiff failed; when called on, to produce the affidavit or the oath required by law, of the debt due. By the fifth section of the act of assembly, passed in 1744, the plaintiff is required, on filing liis declaration, to make oath to the debt or sum demanded. In tills ease, it appears that on the suggestion of the attorneys of the plaintiff, that the defendant had an attorney in fact, residing in Charleston; an order was obtained that a rule should issue, directing him to plead within two months from the date hereof, or that judgment by default should go. Under this order, the pleadings were regularly made up, and the parties were at issue on the merits.
By a clause of the act of 1785, all attachments shall be repleviable by appearance, and putting in special bail, if by the court ruled so to do. (Public Taws 368.) Here then was an appearance on the part of the defendant, and he pleaded to issue. No special bail was required or ruled by the court. After these proceedings, the court think that it was too late for the defendant to take advantage of such an omission; pleading to issue amounted to a waiver of such exception. The exception might have been taken advantage of by motion to dissolve the attachment, had the plaintiff in fact failed to comply with what tie law required of him; which is not to be presumed under all the circumstancés cf the case. This motion must, therefore, fail..
On the last ground taken for a non-suit, it is certain that the assignment as filled up, seems to be at variance with the proof offered, as to the right intended to be transferred. The testimony of Gen. Geddes is express, that the bond was to be assigned as a collateral security to Fitzsimons, Stoney, Williamson and Cohen; and the answer of Mr. Stoney, in equity (before alluded to) is equally express, that it'was not to be for his-exclusive benefit. But although others, besides Mr. Stonejy were interested in this bond, which was to be lodged as a collateral security, for thei.r joint benefit; still from the testimony of General Geddes, it appears that the assignment was left in blank, for the parties to fill up as they pleased. There can be ■*10 doubt that an action upon a contract, either express or *173 implied, by parol or under seal, must be brought in the name of the party in whom the legal interest is vested; and that in all eases, if it appear on the face of the pleadings, that there are-■Other obligees, covenantees or parties to the contract, who ought tobe, hut are not joined in the action, it is fatal on demurrer or on motion in arrest of judgment; and though the objection may not appear on the face of the pleadings, the defendant may avail hknself of it, either by plea in abatement, or as a ground of non-suit on the trial, upon the plea of general issue, 1st Chitty on Pleading, 3. 7. Notwithstanding such is the law, still the court think that as to such an endorsement as was made upon this bond, it is competent in the holder to fill it up as be pleases.
Op the ground taken for a new trial, 1 shall briefly comment: first, upon the admissibility of Joshua Brown, as a witness, and conclude by referring to the nature of this assignment, and wbat took place under it.
Mr. Brown was certainly an interested witness, and such as ought to have been excluded. He had guarantied the payment of this bond to Henry, and his assigns; consequently in tlie event of its not being recovered From M'Neill, he, Brown, would on his guarantee, have been liable to the assignee of Henry, for the amount of the bond. By fixing, therefore, a responsibility upon M‘NeilI, he would at the same time free himself from the liability produced by his special guarantee. It is not denied hut that this circumstance, if it stood alone, would have rendered him incompetent; but it is urged that he is also liable to the same extent to M‘Neill, on the receipt and discharge given to him on the bond, and tbat this equal liability to tbe parties litigant, went to remove the objection of interest and rendered him competent. But if what he has stated be a fact, it may well be questioned whether Brown.would he liable in any manner to M‘ Neill, who would in such case have made himself particeps crhninis; and in no event could he he liable to M!Neill, for morethan he received. So that it follows very clear-' ly that Brown was altogether interested in Stoney’s recovery,- and, therefore, was in law an incompetent witness.
As to the assignment made by Henry, in blank, accompanied with the solemnity of a'seal and delivery of possession *174 fp Brown, of the bond, no. other correct inference can be drawn from it, but that he, Brown, ipso facto, became in legal contemplation the assignee and owner of the bond, and that an obligor making payment, without fraud, to such holder and ostensible assignee, is and ought to be protected against the real owner, whoever he may be. The circumstance of tire special guarantee upon the back of the bond by Brown, would, in conjunction, with the possession of the bond in him, strengthen the presumption of his ownership. What other fair inference could be drawn, but that in consequence of his liability, he had taken np the bond and made it his own; and when we add thereto, the circumstance of the assignment in blank under seal, no possible doubt could remain on the mind of any man, but that Brown was not only the ostensible but the real and bona fide owner of. the bond, and might do with it as he pleased. It is certain that McNeill, the obligor, had no hand in placing the bond in the possession of Brown, nor had he any in its remaining with him for so long a space of time as two years. No person, therefore, concerned in interest, can with any color of propriety complain, if under circumstances so well calculated to deceive, a debtor has, when called on for payment, discharged Ins obligation to such holder and ostensible owner.
The filling up the blank in the name of Mr. Stoney, at a period long subsequent to the settlement made with Brown, can in no manner do away the legal eflect and operation of the payment which was made; a payment and discharge entered at the time on the bond, and which, if performed with good faith; •cannot be called in question.
I will only add one further remark in respect to the rejection of. Mr. Robinson’s testimony. This evidence ought, in my opinion, to have been received. If it could have proved that this bond was the copartnership property of Henry and Brown; that •public notice in the papers bad been given, that all debts due to them were transferred to Joshua Brown; these facts, conjoined with the endorsement in blank by Henry, and possession of the bond by Brown, would certainly have established as strong a case to support the settlement made by M'Neill, as could possibly be presented to the view of a court and jury. Independently, however, of. this view, lire endorsement in blank by *175 Henry, and possession of the bond by Brown, were sufficient in law to authorise Brown, as ostensible owner, to'adjust and settle with the obligor, ■ M'Neill; as lie might think proper. The court are, therefore, c-f opinion that a new trial should be granted:
Johnson, justice, concurred.